**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL MARTIN,**<br><br>           Plaintiff,<br><br>           v.<br><br>**ANTONIO CAMPUS,** *et al.*,<br><br>           Defendants. | Civil Action No. 16-3449 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendants the State of New Jersey, the New Jersey Department of Corrections ("NJDOC"), Steve Alaimo ("Alaimo"), Steve Johnson ("Johnson"), Patrick Jenson ("Jenson"), Richard DeFazio ("DeFazio"), Gilbert Christmas ("Christmas"), Elia Perez ("Perez"), Joshua Leek ("Leek"), Brian Wheeler ("Wheeler"), Sean Patterson ("Patterson"), Joseph Bundy ("Bundy"), Davin Borg ("Borg"), Thomas Phillips ("Phillips"), Michel Crawford ("Crawford"), Roderick Smith ("Smith"), William Gallagher ("Gallagher"), Sean Clifton ("Clifton"), and Craig Amato ("Amato") (collectively "Defendants"). ("Motion," ECF No. 186.) Defendants filed a Moving Brief in support of the Motion. ("Moving Br.," ECF No. 186-1.) Plaintiff filed a Brief in Opposition ("Opp'n Br.," ECF No. 193), and various exhibits (ECF No. 190).[1] Defendants filed a Reply Brief ("Reply Br.," ECF No. 194), and Plaintiff filed a sur-reply (ECF No. 195).

---

[1] In his opposition brief, Plaintiff states that he will dismiss the complaint against Defendants Alaimo, Phillips, Clifton, Christmas, Amato, Crawford, Johnson and Borg. (Opp'n Br. at 1 n.1.) The Court will therefore dismiss those

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons set forth below, the Court will **GRANT** Defendants' Motion.

I. **PROCEDURAL HISTORY**

On February 12, 2016, Plaintiff filed his complaint in the Superior Court of New Jersey, Mercer County. (ECF No. 1-1.) On June 15, 2016, Defendants removed the case to this Court. (*Id*.) On August 8, 2016, Defendants State of New Jersey and the NJDOC moved to dismiss the complaint. (ECF No. 7.) On January 27, 2017, Plaintiff filed an amended complaint. (ECF No. 17.)

On February 23, 2017, Defendants the State of New Jersey and the NJDOC again moved to dismiss (ECF No. 24), and on March 16, 2017, that motion was granted in part by the Honorable Freda L. Wolfson, U.S.D.J. (ECF No. 31.) The Court concluded that the State of New Jersey and the NJDOC were not "persons" amenable to suit under § 1983 and the New Jersey Civil Rights Act ("NJCRA"). (*Id*.) The Court therefore dismissed those claims against Defendants State of New Jersey and NJDOC but denied the motion to dismiss as to Plaintiff's claims under the New Jersey Tort Claims Act. (*Id*.)

Thereafter, Defendants Bundy, Alaimo, DeFazio, Amato, Gallagher, Christmas, Crawford, Jenson, Leek, Patterson, Perez, Phillips, and Wheeler were served with the summons and complaint. (ECF No. 63, 77, 78, 82, 83.) On April 25, 2019, those Defendants filed a motion to dismiss the amended complaint. (ECF No. 85.) While the motion was pending, on February 12, 2020, Plaintiff filed a second amended complaint, alleging 1) common law negligence against

---

Defendants. The remaining Defendants include Jenson, DeFazio, Perez, Leek, Wheeler, Patterson, Bundy, Smith, and Gallagher.

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

Defendant Cambro Manufacturing Company (Count One); 2) an Eighth Amendment violation against Defendants Gallagher, Antonio Campos, G. Lewis, Alaimo, and Bundy (Count Two); and 3) a First Amendment violation against Gallagher, Bundy, Wheeler, Alaimo, Smith, Phillips, Borg, Patterson, DeFazio, Christmas, Clifton, Perez (Count Three).[3] ("SAC", ECF No. 99.) Defendants filed an answer on March 9, 2020 and an amended answer on August 25, 2020. (ECF Nos. 100, 109.)

On November 4, 2020, the Court granted a request from Plaintiff to dismiss Count One against Defendant Cambro Manufacturing Company with prejudice. (ECF No. 112.) As a result, Count One was dismissed. Additionally, on December 19, 2022, Plaintiff agreed to dismiss Count Two of his second amended complaint. (ECF No. 146.) That leaves only Count Three, which asserts that "Defendants Gallagher, Bundy, Wheeler, Alaimo, Smith, Phillips, Borg, Patterson, DeFazio, Christmas, Clifton, Perez, Jensen and Leeks violated rights secured to him by the First and Fourteenth Amendments to the U.S. Constitution." (SAC ¶ 79.)

On December 23, 2022, Defendants filed their first motion for summary judgment. (ECF No. 147.) Thereafter, the case was reassigned to the undersigned. (ECF No. 151.) On February 8, 2023, Plaintiff filed an opposition to the motion, in which Plaintiff agreed to dismiss the claims against Alaimo, Phillips, Clifton, Christmas, Amato, Crawford and Johnson. (ECF No. 155 at 1.) On July 6, 2023, the Court administratively terminated the first summary judgment motion to allow for additional discovery. (ECF No. 164.) On December 13, 2024, Defendants filed the instant Motion for Summary Judgment, limited to Count Three—the remaining claim in the second amended complaint. (ECF No. 186.)

---

[3] The second amended complaint does not assert a claim against the State of New Jersey or NJDOC. Accordingly, the State of New Jersey and the NJDOC will be terminated from this action.

## II. FACTUAL BACKGROUND

The factual issues in this case are not in dispute.[4] For a comprehensive review of the factual background, the Court references the parties' statement of facts. (*See* Defendants' Statement of Undisputed Material Facts ("DSUMF"), ECF No. 186-3; Plaintiff's Responsive Statement of Undisputed Material Facts ("RSUMF"), ECF No. 190-1; Plaintiff's Supportive Statement of Material Facts ("PSSOF"), ECF No. 190-2.)

Plaintiff was an inmate housed at Northern State Prison ("NSP") from April 22, 2003, through April 3, 2017. At the time of the initial complaint, Defendants were various employees and correctional officers at NJP. (DSUMF at ¶ 2–18; RSUMF at ¶ 2–18.)[5]

From around July 2016 through November 2016, Plaintiff's housing assignment was in the North Compound, 2A, Cell #9. (PSSOF ¶ 2.) In July 2016, Plaintiff was employed as a paralegal at NSP. (*Id.*) As an inmate paralegal, his work involved representing the inmate population in disciplinary proceedings and understanding the grievance process. (*Id.*) Plaintiff worked with another inmate, Francis Hannon ("Hannon"), who, in addition to being a paralegal, was also a wing representative. (*Id.*)[6]

---

[4] Indeed, Plaintiff admits to Defendants' Statement of Material Facts (ECF No. 190-1 at 1-2), but notes that some details are incomplete. Thus, he provides the Court with a Supplemental Statement of Material Facts that provides more in-depth details. (ECF No. 190-2.) Besides two objections to hearsay statements, Defendants do not dispute any of the facts Plaintiff submitted in his Supplemental Statement. (ECF No. 194-1.) Accordingly, the Court summarizes the facts of the case as submitted by Plaintiff, and accepts the facts as submitted by the parties as true.

[5] Alaimo was employed as a Major at NSP; Borg was employed as a Major at NSP; Bundy was employed as a Correctional Police Lieutenant at NSP; Christmas was employed as a Senior Corrections Officer at NSP; Clifton was employed as a Senior Corrections Officer at NSP; Crawford was employed as a Lieutenant at NSP DeFazio was employed as a Senior Corrections Officer at NSP and then was promoted to Lieutenant in 2017; Gallagher was employed as a Senior Corrections Officer at NSP and he was transferred to NSP in September of 2016; Jenson was employed as a Corrections Officer Recruit at NSP and then as a Senior Corrections officer at NSP; Johnson was employed as the Administrator at NSP; Leek was employed as a Corrections Officer Recruit at NSP; Patterson was employed as a Sergeant at NSP; Perez was employed as a Senior Corrections Officer at NSP; Phillips was employed as a Lieutenant at NSP; Smith was employed as a Sergeant at NSP; Wheeler was employed as a Senior Corrections Officer at NSP.

[6] A wing representative acts as an advocate on behalf of fellow inmates and communicates the concerns, violations, or problems inmates are experiencing with the jail administration. (ECF No. 194-1 at 2.)

4

On July 19, 2016, Hannon advised Johnson, by memorandum, that some officers were not allowing a social worker, Rafeal Laboy ("Laboy"), to perform his job. (*Id.*) Laboy informed Hannon that he was being harassed by Gallagher, who was often intoxicated on the job. (*Id.*) Hannon told Laboy that "Gallagher had a drinking problem and had a little too much that day, so he should just leave him alone and lock in." (*Id.* ¶ 7.) Hannon left the housing unit to visit clients and when he returned, he heard Laboy and Gallagher having a conversation. (*Id.*)

On July 21, 2016, Gallagher filed a Special Custody Report against Laboy, alleging that he had threatened him with bodily harm. (*Id*. ¶ 8.) On July 22, 2016, Plaintiff provided a statement to the disciplinary sergeant as a witness on Laboy's behalf, refuting the allegations by Gallagher. (*Id.* ¶ 9.) Hannon also submitted a witness statement on behalf of Laboy, where he recounted the ongoing issues with Social Worker Aides. (*Id.* ¶ 10.)

On July 29, 2016, the Disciplinary Hearing Officer at NSP found Laboy not guilty due to a lack of substantial evidence. (*Id*. ¶ 13.) After being found not guilty, Plaintiff and Gallagher had a conversation about the disciplinary hearing. (*Id.* ¶ 14.) Plaintiff contends that as a result of the conversation, Gallagher denied him his customary shower, while other inmates and paralegals were allowed to shower. (*Id.* ¶ 15.) After unsuccessfully trying to resolve the issue with Gallagher, Plaintiff "tried to resolve the issue by going through the chain of command." (*Id.* ¶ 17.)

Around this time, Plaintiff explained to Bundy and Hannon that he was being retaliated against by Gallagher for being a witness in Laboy's case. (*Id.* ¶ 21.) On July 30, 2016, Plaintiff filed a formal grievance against Gallagher and another correctional officer for the alleged retaliation. On or about August 6, 2016, jail investigators, including Defendant Borg, investigated Plaintiff's grievance. During the investigation, Gallagher purportedly yelled at Plaintiff for filing

5

the grievance. (*Id.* ¶ 28.) After the investigation, Gallagher was removed from his duty in Plaintiff's housing unit.

However, in September 2016, Gallagher returned to the housing unit, as a non-regular relief officer. (*Id.* ¶ 31.) He then denied Plaintiff the use of a "kiosk JPay system and phone," and again denied him a work shower. (*Id.* ¶ 32.) As a result, Plaintiff filed another grievance, setting forth Gallagher's retaliatory actions. (*Id.*)

Gallagher was removed once again from Plaintiff's housing unit and replaced by Wheeler. (*Id.* ¶ 34.) Like Gallagher, Wheeler informed Plaintiff that he would no longer be allowed to take a shower in the evening. (*Id.* ¶ 35.) Plaintiff again addressed this issue with Bundy and Johnson. (*Id.* ¶ 36.) Gallagher was ultimately re-assigned to another prison, which made NSP officers upset with Plaintiff. (*Id.* ¶ 42.) Additionally, various NSP officers allegedly threatened Plaintiff for how he responded to the shower incident with Gallagher. (*Id.*) According to Plaintiff, NSP officers were upset with Plaintiff for the grievances he often filed. (*Id.* ¶ 44.) As a result of these purported threats, Plaintiff filed more grievances.

On November 25, 2016, Perez, Christmas, Clifton, Jenson, and Leek conducted an isolated search of Plaintiff's cell and temporarily placed him in a holding cell. (*Id.* ¶¶ 46, 48.) While Plaintiff was in the holding cell, DeFazio allegedly threatened him for being a "snitch." (*Id.* ¶ 48.) On November 25, 2016, DeFazio completed a Special Custody Report, where he identified the staff involved in the search of Plaintiff's cell, and noted that the officers found contraband. (*Id.* ¶ 59.) On November 28, 2016, Plaintiff appeared before an Institutional Hearing Officer, and on November 29, 2016, he was found guilty, and sanctioned to a thirty day loss of recreation. (*Id.* ¶ 112.) On November 30, 2016, Plaintiff filed an additional grievance with NSP administration, alleging that he was targeted by staff in a "massive conspiracy." (*Id.* ¶ 67.) As a result of this

6

grievance, Defendant Jensen was interviewed by the Special Investigations Division ("SID"). (*Id.*) After being found guilty and after several appeals, on March 2, 2018, the NJDOP found Plaintiff not guilty of the prior charges imposed at NSP and they were dismissed. (*Id.* ¶ 113.)

### III.   SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's First Amendment claim (Count Three) pursuant to 28 U.S.C. § 1331.

### IV.   STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *See id.* at 250–51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial

exists and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## V. DISCUSSION

In the Motion, Defendants seek summary judgment dismissal of Count Three—the remaining count in the second amended complaint—which asserts a retaliation claim under the First Amendment to the United States Constitution. To establish a claim for retaliation, a plaintiff must satisfy a three-part test: 1) that Plaintiff was engaging in a constitutionally protected activity; 2) that he was subjected to an adverse action by Defendants; and 3) that the constitutionally-protected activity was a substantial or motivating factor in Defendants taking the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). To satisfy the "adverse action" requirement, an inmate must demonstrate that the conduct by prison officials was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Id.*; *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). This is an objective analysis. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). If the plaintiff meets these requirements, then the burden shifts to the defendant to prove by a preponderance of the evidence that he or she would have taken the same adverse action even if the plaintiff had not engaged in the protected activity. *Rauser*, 241 at 333. If the prison officials can make this showing, the plaintiff's retaliation claim should be dismissed. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim because the Defendants never took an adverse action against Plaintiff and their actions were not in retaliation for Plaintiff engaging in activities protected under the First Amendment to the United States Constitution. (Moving Br. at 14, 25.) Plaintiff argues that Defendants retaliation against

8

him—preventing him from showering, issuing verbal threats, and searching his cell—started because Plaintiff was a witness for Laboy and testified and filed grievances against Gallagher.

For the reasons that follow, the Court finds that there is no genuine dispute of material fact and, as a matter of law, Plaintiff is unable to satisfy his burden of proving that Defendants' actions rose to the level of retaliation.

The parties analyze the actions of each Defendant separately. To summarize: Plaintiff's retaliation claim against Wheeler and Gallagher relates to those two Defendants issuing verbal threats towards Plaintiff and preventing him from showering. (Opp'n Br. at 5.) Next, Plaintiff argues that DeFazio, Jenson, Leek, Patterson, and Perez retaliated against him when they conducted a search of his cell. (*Id.* at 12.) Lastly, Plaintiff argues that Bundy and Smith retaliated against him when they yelled at him and told him to stop filing grievances. (*Id.* at 10.) This Court will analyze these three groups of Defendants together in turn.

### A. **Wheeler and Gallagher**

Wheeler and Gallagher argue that they are entitled to summary judgment because "neither verbal threats nor limitations on the time for a shower are sufficient to support" a claim of retaliation. (Moving Br. at 8.) The Court agrees. Plaintiff fails to make out a successful retaliation claim against Wheeler and Gallagher because to adequately plead a constitutional retaliation claim, a plaintiff must plead more than verbal threats. Indeed, "allegations of verbal harassment, unaccompanied by another injury, are not cognizable" under § 1983. *Sears v. McCory*, 815 F. App'x 668, 670 (3d Cir. 2020).

Here, the record before the Court suggests that Wheeler and Gallagher made comments and verbal threats to Plaintiff. (*See generally* PSSOF.) But this is insufficient to support his retaliation claim as there is no evidence in the record to suggest that Wheeler and Gallagher took

9

adverse action against Plaintiff. The record is also devoid of evidence to support that Plaintiff suffered an injury accompanying those threats. Moreover, the threats did not deter Plaintiff from exercising his constitutional rights, namely, filing grievances. *See Rauser*, 241 F.3d at 333. Indeed, Plaintiff continued to file grievances and complaints with the administration even after the verbal threats were made. (*See, e.g.*, PSSOF ¶ 22, 27, 32, 45, 67.)

In addition to the verbal threats, Plaintiff argues that Wheeler and Gallagher retaliated against him by preventing him from showering during the time period Plaintiff sought. (Opp'n Br. at 4–5) Defendants do not dispute that Plaintiff was prevented from showering during certain instances. They argue, however, that "[c]aselaw establishes that this kind of limitation on showering [is] insufficient to support a retaliation claim." (Moving Br. at 8, 10, 11.) The Court finds that Plaintiff's retaliation claim fails as it relates to showering because, as Defendants aptly point out, Plaintiff was permitted to shower, albeit, not at the time he wanted. This "temporary inconvenience[]" does not amount to retaliation. *See Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009). Additionally, there is no evidence in the record to suggest that the denial of Plaintiff's request to shower at a particular time caused severe pain or harm to Plaintiff. *See Brandon v. Alam*, Civ. No. 22-3022, 2024 WL 2764431, at *2 (2d Cir. May 30, 2024) (vacating the district court's grant of summary judgment because a reasonable jury could determine that the denial of an inmates shower caused more than *de minimis* harm and constituted adverse action, given that the inmate had a rash and needed to shower to avoid pain).[7]

---

[7] The Third Circuit has not analyzed a case with similar facts. As Defendants correctly point out, and Plaintiffs do not dispute, district courts throughout the country have held that being deprived of a shower for a period of days does not rise to the level of adverse action. *See, e.g.*, *Quezada v. Fischer*, Civ. No. 13-885, 2017 WL 9509993, at *28 (N.D.N.Y. Aug. 31, 2017) ("The Court finds that denial of the limited number of showers claimed by Plaintiff as well as soap, razor, and clippers, does not constitute adverse action for purposes of a retaliation claim."); *Martinez v. White*, Civ. No. 13-53, 2015 WL 1611840, at *3 (W.D. Ky. Apr. 10, 2015) (concluding in a screening opinion of the complaint that the denial of showers did not constitute adverse action); *Purdie v. Graham*, Civ. No. 09-971, 2012 WL 1085817, at *7 (N.D.N.Y. Feb. 29, 2012) (noting that the denial of several meals, showers, and recreation for a few days is not sufficient to rise to the level of adverse action); *Lunney v. Brureton*, Civ. No. 04-2438, 2007 WL 1544629, at *21

10

Accordingly, Wheeler and Gallagher are entitled to summary judgment.

**B.      DeFazio, Jenson, Leek, Patterson, and Perez**

Next, Plaintiff argues that DeFazio, Jenson, Leek, Patterson, and Perez retaliated against Plaintiff when they searched his cell—during which some of Plaintiff's property was lost or destroyed—and when they filed an alleged false disciplinary report against Plaintiff for having contraband in his cell. (Opp'n Br. at 12.) Defendants contend that the search and the disciplinary report fail to support a retaliation claim because Defendants were not motivated by Plaintiff's constitutionally protected activities. (Moving Br. at 23–24.)

For the reasons that follow, the Court finds that DeFazio, Jenson, Leek, Patterson, and Perez are entitled to summary judgment. Cell searches are a routine part of prison life, but searches that constitute "calculated harassment unrelated to prison needs" are not permissible. *Hudson v. Palmer*, 468 U.S. 517, 526–27, 530 (1984); *see also Rosario v. Cook*, Civ. No. 22-866, 2024 WL 1077320, at *3 (M.D. Pa. Mar. 12, 2024) (same). A retaliatory search of a prisoner's cell and seizure of his legal papers or other property may be sufficient to meet the adverse action prong for a First Amendment retaliation claim. *Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (*citing Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (collecting cases)). However, a single cell search is insufficient to support a First Amendment retaliation claim because it is a "generally acceptable prison practice." *Sims v. Vaughn*, 189 F. App'x. 139, 141 (3d Cir. 2006); *see also Hudson*, 468 U.S. at 529 (holding that "[r]andom searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution").

---

(S.D.N.Y. May 29, 2007) (same); *Lyons v. Wall*, Civ. No. 05-433, 2006 WL 2945256, at *5 (D.R.I. Oct.13, 2006) (sporadic cold showers are *de minimis*).

11

Here, there is no evidence that Defendants searched Plaintiff's cell to retaliate against him. To the contrary, Defendant Patterson testified in a deposition that it was an informant who indicated that Plaintiff had contraband in his cell, which resulted in the search. (PSSOF ¶ 80.) Uncovering contraband is most notably "necessary to ensure the security of the institution." *Hudson*, 468 U.S. at 529. Moreover, the officers who conducted the search of Plaintiff's cell were "outside" officers who were brought in solely to conduct the search. (*Id.* ¶ 92.) There is no evidence in the record that the officers knew who Plaintiff was prior to the search, that they were aware of the grievances Plaintiff filed, or that they knew of the extent of the relationship between Plaintiff and Gallagher. (DSUMF ¶¶ 38–39, 42–44, 45, 47–49.) Additionally, there is no evidence in the record to demonstrate that the officers were aware that Plaintiff was a witness against Gallagher, thus discrediting the theory that the officers were retaliating against Plaintiff when they searched his cell. Indeed, Christmas, DeFazio, Jensen, Patterson, Perez, and Leek indicated as such in their depositions, which Plaintiff does not oppose. (*See id.*)

In any event, it is undisputed that contraband was found during the search and Plaintiff was ultimately charged. (PSSOF ¶¶ 90, 112.) Although those charges were later downgraded and dismissed, there is no evidence in the record to support that the search was conducted for the purposes of retaliation or that the charges were dropped because of Plaintiff's retaliation claim. (*Id.*) As such, the Court finds that the mere search of Plaintiff's cell, a one-time incident under these circumstances, is insufficient to constitute an adverse action giving rise to a First Amendment retaliation claim.

Relatedly, Plaintiff argues that the disciplinary report written after the search of his cell constituted retaliation. That argument is unpersuasive. The law is clear that a retaliation claim cannot be based on a false disciplinary report if the associated charge is later dismissed. *See*

*Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (holding that a retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action). Here, it is undisputed that the single disciplinary charge against Plaintiff was downgraded and dismissed. (PSSOF ¶¶ 111–113.) Thus, Plaintiff cannot rely on the alleged false disciplinary report to sustain a claim against Defendants for retaliation. Accordingly, the Court grants summary judgment for Defendants DeFazio, Jenson, Leek, Patterson, and Perez.

### C. Bundy and Smith

Lastly, Plaintiff argues that Defendants Bundy and Smith threatened him by yelling and shouting at him about the grievances Plaintiff filed against the officers, and therefore retaliated against him. (Opp'n Br. at 10–12.) Plaintiff contends that Smith and Bundy told Plaintiff to "let it go" when Plaintiff would file complaints. (*Id.*) As to Smith individually, Plaintiff claims that Smith retaliated against him when Smith told Plaintiff that he is making "lots of waves" and that he is "ruffling feathers" by complaining to administration. (*Id.* at 4, 11, 18.)

As noted above, mere words do not constitute retaliation. *Sears*, 815 F. App'x at 670. Additionally, Plaintiff is unable to show that Bundy and Smith's words constitute adverse action. Indeed, Plaintiff has not demonstrated through credible evidence that any of the statements made were accompanied by any physical act or other conduct. To the contrary, Plaintiff points out instances where Bundy was, in fact, trying to help Plaintiff with his shower issues. (PSSOF ¶¶ 17, 21, 27, 36.)

Further, Plaintiff's argument that he was retaliated against by Bundy and Smith is belied by the record. Plaintiff contends that Bundy came into Unit 2A and was yelling and threatening "*anyone* who reported to administration." (*Id.* ¶ 17) (emphasis added). But this language suggests that Bundy was yelling at not just Plaintiff but other inmates. There is no evidence in the record

13

that Bundy was purposefully directing his words to Plaintiff.  When Bundy and Smith did speak with Plaintiff directly, they helped Plaintiff resolve his problems.  There is thus no evidence in the record to support Plaintiff's contention that Bundy and Smith's words of "stand down" and that Plaintiff was "ruffling a lot of feathers," (*Id.* ¶¶ 43, 44) amounted to a First Amendment retaliation.  Lastly, Plaintiff documented Bundy and Smith's comments and filed another grievance against them.  (*Id.* ¶ 45.)  Thus, Plaintiff is, again, unable to show that Defendants comments deterred Plaintiff from exercising his constitutional rights.

Accordingly, the Court will grant summary judgment as to Bundy and Smith.

## VI. CONCLUSION[8]

For the reasons state above, Defendants' Motion (ECF No. 186) will be **GRANTED**.  An accompanying Order will follow.

Date: July 30, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[8] Because the Court finds that Defendants are entitled to summary judgment, it need not address Defendants' argument that they are entitled to qualified immunity.